UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,
c/o U.S. Attorney's Office
601 D Street, NW
Washington, DC 20530,

Plaintiff,

v.

MOTOR TANKER TIFANI WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 9273337, AND THE OIL CARGO LADEN THEREON,

Defendants *In Rem.*

Case: 1:26-cv-01373
Assigned To : Unassigned
Assign. Date : 4/22/2026
Description: Gen. Civil (E-DECK)

**FILED UNDER SEAL**

**UNITED STATES' VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

COMES NOW, Plaintiff the United States of America (the "United States"), by and through the United States Attorney's Office for the District of Columbia, which brings this verified complaint for forfeiture in a civil action *in rem*, in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure, against: the Motor Tanker (M/T) TIFANI bearing International Maritime Number ("IMO") 9273337, together with the oil cargo laden on the TIFANI at the time it was seized by the U.S. Government in April 2026 ("Defendant Property"), and alleges as follows:

**NATURE OF THE ACTION AND DEFENDANT *IN REM***

1. This *in rem* forfeiture action arises out of an investigation by Homeland Security Investigations ("HSI") and the Federal Bureau of Investigation ("FBI"). The United States is investigating the transportation and sale of Iranian oil products for the benefit of the Islamic Revolutionary Guard Corps ("IRGC") and the IRGC Quds Force ("IRGC-QF"). This action

RECEIVED
APR 22 2026
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

seeks to forfeit the Defendant Property which affords the Iranian Ministry of Petroleum, the National Iranian Oil Company ("NIOC"), and the vessel's owner and its commercial and technical manager a source of influence over the Iranian Ministry of Petroleum, NIOC, the IRGC, including the IRGC-QF, by transporting Iranian petrochemical products to generate revenue for the IRGC, a designated Foreign Terrorist Organization ("FTO").

2. The Defendant Property was seized from the owner and the technical management company of the TIFANI, while it was laden with approximately 2 million barrels of Iran-origin petroleum cargo.

## JURISDICTION AND VENUE

3. This Court has *in rem* jurisdiction over the Defendant Property pursuant to 28 U.S.C. §§ 1333, 1345, and 1355.

4. Venue is also proper within this judicial district pursuant to 28 U.S.C. § 1355(b)(2).

5. Pursuant to 14 U.S.C. § 522(a) and 28 U.S.C. §§ 2461(b), 1333(1), this court has jurisdiction for property subject to forfeiture on the high seas.

## FACTS GIVING RISE TO FORFEITURE

### A. <u>Relevant Entities</u>

#### i. Government of Iran

6. On January 19, 1984, the United States designated Iran as a state sponsor of terrorism. *See* https://www.state.gov/reports/country-reports-on-terrorism-2020/iran/. For 2020, the most recent year for which Country Reports on Terrorism are available, the State Department concluded that "Iran continued its terrorist-related activity in 2020, including support for Hizballah, Palestinian terrorist groups in Gaza, and various terrorist and militant groups in Iraq, Syria, and elsewhere throughout the Middle East." *Id.* The State Department further found that

"Iran used the Islamic Revolutionary Guard Corps – Qods Force (IRGC-QF) to provide support to terrorist organizations, provide cover for associated covert operations, and create instability in the region," and that "the IRGC-QF is Iran's primary mechanism for cultivating and supporting terrorist activity abroad." *Id.* To date, the United States has not delisted Iran as a state sponsor of terrorism. *See* https://www.state.gov/state-sponsors-of-terrorism/.

**ii. Iranian Ministry of Petroleum**

7. According to the Iranian Ministry of Petroleum's website, the ministry "is a state-run organ affiliated with the Executive branch of government" that was established in 1979. https://en.mop.ir/home/. The ministry reports that it "is tasked with exercising the principle of Iran's ownership of and national sovereignty over oil and gas resources as well as separating governance from administrative tasks in the development of oil and gas industry." *Id.* The ministry exercises its authority over the petroleum industry through four subsidiaries – NIOC, the National Iranian Gas Company, the National Iranian Oil Refining and Distribution Company, and the National Petrochemical Company. *Id.* ("The structural organization of the Ministry comprises a head office and four main subsidiaries – National Iranian Oil Company (NIOC), National Iranian Gas Company (NIGC), National Iranian Oil Refining and Distribution Company (NIORDC) and National Petrochemical Company (NPC). Through subsidiaries, the Ministry supervises exploration, extraction, marketing and selling of crude oil, natural gas and petroleum products in the country.").

8. The Iranian government's ownership of petroleum resources stems from Articles 44 and 45 of Iran's constitution. Article 44 provides in part: "The economy of the Islamic Republic of Iran is to consist of three sectors: state, cooperative, and private, and is to be based on systematic and sound planning. The state sector is to include all large-scale and mother

industries, foreign trade, major minerals, banking, insurance, power generation, dams and large-scale irrigation networks, radio and television, post, telegraph and telephone services, aviation, shipping, roads, railroads and the like; all these will be publicly owned and administered by the State." https://www.constituteproject.org/constitution/Iran_1989.pdf?lang=en. [1] Article 45 provides in part: "Public wealth and property, such as uncultivated or abandoned land, mineral deposits, seas, lakes, rivers and other public water-ways, mountains, valleys, forests, marshland, natural forests, unenclosed pastureland, legacies without heirs, property of undetermined ownership, and public property recovered from usurpers, shall be at the disposal of the Islamic government for it to utilize in accordance with the public interest." *Id.*

9. Article 2 of Iran's Oil Law (Sep. 30, 1987) provides: "The country's oil resources are part of the Anfal and public wealth, and according to Article 45 of the Constitution, is at the disposal of the Islamic government, and all facilities, equipment, assets and investments that have been or will be made by the Ministry of Oil and subsidiaries at home and abroad will belong to the Iranian people and to the Islamic government. The exercise of sovereignty and ownership of oil resources and facilities belongs to the Islamic Government, which according to the provisions and powers enumerated in this law, it is the responsibility of the Ministry of Oil to act in accordance with the general principles and plans of the country." https://en.mop.ir/portal/home/?news/368984/368988/379478/petroleum-law.

10. On October 26, 2020, the Department of the Treasury's Office of Foreign Assets Control ("OFAC") designated the Iranian Ministry of Petroleum under Executive Order 13,224 for providing financial support to the Islamic Revolutionary Guard Corps – Quds Force ("IRGC-

---

[1] The Constitution of the Islamic Republic of Iran was adopted and went into force in 1979. It has been amended once, on July 28, 1989.

QF"). *See* https://home.treasury.gov/news/press-releases/sm1165. OFAC found that "[t]he Iranian Ministry of Petroleum has been used by individuals at the highest levels of the Iranian regime to facilitate the IRGC-QF's revenue generation scheme." *Id.*

**iii. Islamic Revolutionary Guard Corps**

11. The IRGC is a branch of the Iranian armed forces whose purpose is to defend the country's political system. The IRGC-QF is a branch of the IRGC that specializes in unconventional warfare and military intelligence operations.

12. The Department of the Treasury has found "[t]he IRGC is Iran's most powerful economic actor, dominating many sectors of the economy, including energy, construction, and banking." https://home.treasury.gov/news/press-releases/tg1718. According to OFAC, "[t]he IRGC and its major holdings, such as the Basij Cooperative Foundation and Khatam al-Anbiya, have a dominant presence in Iran's commercial and financial sectors, controlling multi-billion-dollar businesses and maintaining extensive economic interests in the defense, construction, aviation, oil, banking, metal, automobile and mining industries, controlling multi-billion dollar businesses." https://home.treasury.gov/news/press-releases/sm703.

13. The IRGC and IRGC-QF use a network of shipping companies and front companies to hide their involvement in the sale and shipment of Iranian oil. Specifically, OFAC has found that the IRGC-QF uses a "complex network of intermediaries … to obfuscate its involvement in selling Iranian oil." https://home.treasury.gov/news/press-releases/sm767; *see also* https://home.treasury.gov/news/press-releases/tg1718 ("The IRGC, long a target of U.S. sanctions, has a history of attempting to circumvent sanctions by maintaining a complex network of front companies."). The Secretary of the Treasury has previously found that holding groups and

companies in the petrochemical sector and elsewhere "provide financial lifelines to the IRGC." https://home.treasury.gov/news/press-releases/sm703.

14. The IRGC generates substantial revenues from the sale of petroleum products. For example, OFAC has reported that "[i]n spring 2019 alone, this IRGC-QF-led network employed more than a dozen vessels to transport nearly 10 million barrels of crude oil, predominantly to the Syrian regime. These shipments, taken collectively, sold for more than half a billion dollars. The same network also sold nearly four million barrels of condensate and hundreds of thousands of barrels [of] gas oil, bringing in another quarter billion dollars." https://home.treasury.gov/news/press-releases/sm767.

15. The IRGC uses the proceeds from the distribution of petroleum to fund its terror activities. OFAC has found that: "Iran's petroleum and petrochemical industries are major sources of revenue for the Iranian regime and funds its malign activities throughout the Middle East." https://home.treasury.gov/news/press-releases/sm885; *see also* https://home.treasury.gov/news/press-releases/sm703 ("The profits from [the IRGC's economic] activities support the IRGC's full range of nefarious activities, including the proliferation of weapons of mass destruction (WMD) and their means of delivery, support for terrorism, and a variety of human rights abuses, at home and abroad."). The Secretary of the Treasury has stated: "Iran's petrochemical and petroleum sectors are primary sources of funding for the Iranian regime's global terrorist activities and enable its persistent use of violence against its own people." https://home.treasury.gov/news/press-releases/sm885.

16. On October 25, 2007, OFAC designated the IRGC-QF under Executive Order 13,224, which is "aimed at freezing the assets of terrorists and their supporters." *See* https://2001-2009.state.gov/r/pa/prs/ps/2007/oct/94193.htm. In part, OFAC found that "[t]he

Qods Force, a branch of the Islamic Revolutionary Guard Corps (IRGC; aka Iranian Revolutionary Guard Corps), provides material support to the Taliban, Lebanese Hizballah, Hamas, Palestinian Islamic Jihad, and the Popular Front for the Liberation of Palestine-General Command (PFLP-GC)." *Id.* On October 13, 2017, OFAC designated the IRGC pursuant to Executive Order 13,224 for providing material support, including training, personnel, and military equipment, to the IRGC-QF. *See* https://home.treasury.gov/news/press-releases/sm0177.

17. On April 8, 2019, the President announced that he would designate the IRGC, including the IRGC-QF, as a Foreign Terrorist Organization under Section 219 of the Immigration and Nationality Act ("INA") (8 U.S.C. § 1189). *See* https://ir.usembassy.gov/statement-from-the-president-on-the-designation-of-the-islamic-revolutionary-guard-corps-as-a-foreign-terrorist-organization/. The announcement noted, in part, that "the IRGC actively participates in, finances, and promotes terrorism as a tool of statecraft," and warned that "[i]f you are doing business with the IRGC, you will be bankrolling terrorism." *Id.* On April 8, 2019, the State Department similarly announced the pending designation of the IRGC, including the IRGC-QF. *See* https://2017-2021.state.gov/designation-of-the-islamic-revolutionary-guard-corps/index.html. That announcement noted that "[T]he IRGC—most prominently through its Qods Force—has the greatest role among Iran's actors in directing and carrying out a global terrorist campaign." *Id.* On April 15, 2019, the Secretary of State published a notice in the Federal Register that he had designated the IRGC, including the IRGC-QF, as a Foreign Terrorist Organization under Section 219 of the INA. *See* 84 Fed. Reg. 15,278 (Apr. 15, 2019), https://www.federalregister.gov/documents/2019/04/15/2019-07415/in-the-matter-of-the-designation-of-the-islamic-revolutionary-guard-corps-and-other-aliases-as-a.

18. The IRGC and IRGC-QF act in foreign commerce with specific aims to threaten U.S. interests and the national security of the United States. The following is just a brief list of many examples of how the IRGC and IRGC-QF engage in foreign commerce and activities outside the borders of Iran to harm the interests of the United States:

a. In likely retaliation for the death of former IRGC-QF commander Qasem Soleimani, in 2021, a member of the IRGC used interstate commerce facilities in a failed plot to commit murder-for-hire and provide material support to a transnational murder plot targeting former National Security Advisor John Bolton, https://www.justice.gov/opa/pr/member-irans-islamic-revolutionary-guard-corps-irgc-charged-plot-murder-former-national.

b. In January 2007, the IRGC-QF led by Abdul Reza Shahla'i planned an attack in Karbala, Iraq that killed five U.S. soldiers and wounded three others, https://rewardsforjustice.net/rewards/abdul-reza-shahlai/.

c. In June 1996, the IRGC was responsible for planning the attack on the Khobar Towers in Dhahran, Saudi Arabia, during which 19 U.S. Air Force personnel were killed and more than 350 were injured, *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163, 174 (D.D.C. 2010). IRGC senior officials recruited the attackers and worked in conjunction with them and Hezbollah, operating out of a terrorist base in the Bekaa or Beqaa Valley in Lebanon where the IRGC provided supplies and funds for the attack. *Id.*

19. Through these actions and many others, the IRGC and IRGC-QF's terrorism affects foreign commerce in a manner that harms the interests of the United States, both domestic and abroad. Indeed, the entire purpose of the IRGC and IRGC-QF's campaigns of terror are to thwart the United States' diplomatic efforts, including its support for peace in the Middle East and

recognition of Israel, by threatening the security of U.S. nationals and attempting to instill fear in the citizens of this country located within and outside its territorial boundaries. *See In re Sealed Case*, 936 F.3d 582, 592 (D.C. Cir. 2019) (criminal defendant's use of drug trafficking to support terrorist organizations "magnifies the effect of his conduct on commerce between the countries where he was operating and the United States"). These terrorist activities undertaken in foreign commerce plainly have a domestic effect on the United States.

**iv. National Iranian Oil Company**

20. NIOC is the national oil company of Iran and a subsidiary of the Iranian Ministry of Oil. NIOC describes itself as "one of the largest oil firms in the world with huge hydrocarbon reserves." https://en.nioc.ir/en-US/en.nioc/5696/page/NIOC-at-a-Glance. NIOC reports that it is "responsible for organizing and policy-making activities of the oil industry, including exploration, drilling, production, research and development, as well as oil and gas exports." *Id*; *see also* https://home.treasury.gov/news/press-releases/sm1165 ("NIOC, overseen by the Ministry of Petroleum, is responsible for the exploration, production, refining, and export of oil and petroleum products in Iran."). According to OFAC, the distribution of NIOC oil "helps to finance Iran's Islamic Revolutionary Guard Corps-Qods Force (IRGC-QF) and its terrorist proxies." https://home.treasury.gov/news/press-releases/sm885.

21. On September 24, 2012, the Department of the Treasury reported to Congress that it had determined that NIOC was an agent or affiliate of the IRGC. *See* https://home.treasury.gov/news/press-releases/tg1718. On October 26, 2020, OFAC designated NIOC pursuant to Executive Order 13,224 "for having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services in support of, the IRGC-QF." *See* https://home.treasury.gov/news/press-releases/sm1165.

**v. Iranian Oil Terminals Company**

22. The Iranian Oil Terminals Company ("IOTC") is a subsidiary of NIOC that operates the Kharg Oil Terminal at Kharg Island, Iran. *See* https://en.nioc.ir/en-US/en.nioc/5699/page/Subsidiaries (listing IOTC as a subsidiary); *see also* https://www.iotco.ir/en/aboutus/introductioncompany (stating that IOTC is "one of the companies under [the] umbrella of [the] National Iranian Oil Company"). IOTC describes itself as "an operational, specialized and professional organization that has the duty of all reservation affairs, crude oil, oil products, liquefied gas and marine services export and import operations along with providing measurement and lab services." *Id.* According to IOTC, its responsibilities include "support and sustained continuation of oil and gas production in the country in four operational zones of Kharg Oil Terminals." *Id.* According to Orbis, a corporate reporting service, the government of Iran is the "global ultimate owner" of IOTC.

**vi. Kharg Oil Terminal**

23. Kharg Oil Terminal is an oil terminal located at Kharg Island, Iran that is operated by IOTC. The terminal has quays or jetties for loading petroleum onto crude oil tankers. *See* https://www.iotco.ir/en/oilterminals/kharg.

24. According to IOTC's website, Kharg Oil Terminal receives oil via pipeline from Iran's South Oilfields, which are operated by the National Iranian South Oil Company ("NISOC"). *See id.*

**vii. National Iranian South Oil Company**

25. According to NISOC's LinkedIn page, "National Iranian South Oil Company (NISOC) . . . is a government-owned corporation under the direction of the Ministry of Petroleum

of Iran and operates as a subsidiary of National Iranian Oil Company." *See also* https://en.nioc.ir/en-US/en.nioc/5699/page/Subsidiaries (listing NISOC as a subsidiary of NIOC).

**viii. M/T TIFANI**

26. The TIFANI (IMO 9273337) is a crude oil tanker built in 2003. The TIFANI has previously sailed under other names, including (in order of recency) the M/T ANAHI and the M/T AMFITRITI.

27. The TIFANI claims to fly the flag of Botswana, but according to information obtained by law enforcement, the vessel is not legitimately registered with Botswana. In fact, Botswana – a landlocked country in Africa – recently informed the IMO that it does not operate a registry of ships. Thus, the TIFANI is flying the Botswana flag under false pretenses and is stateless. Vessels involved in evading sanctions and moving Iran-origin oil for the benefit of the IRGC frequently fly false flags as an obfuscation tactic, in part because many countries that maintain reputable flag registries will not allow such vessels to register and fly their flags.

28. According to a commercially available database of shipping industry information, since in or around August 2022, the TIFANI's registered and beneficial owner is Suriname-registered World Crew Provider NV. According to the same database, since in or around December 2024, the vessel's commercial/technical manager is India-based ENSA Ship Management Private Limited ("ENSA").

29. On July 30, 2025, the Department of State designated ENSA as a sanctions target pursuant to Executive Order 13846 for knowingly engaging in a significant transaction for the purchase, acquisition, sale, transport, or marketing of petroleum or petroleum products from Iran. *See* https://www.state.gov/releases/2025/07/sanctioning-entities-that-have-traded-in-irans-

petroleum. On the same day, the TIFANI was identified as blocked property in which ENSA has an interest.




*Stock image of the TIFANI*

30. As noted above and detailed more below, the TIFANI has a history of engaging in business with Iran and sanctioned entities in Iran and exhibiting behaviors that are regularly employed by the ghost fleet, such as location spoofing and claiming false flags/nationalities. The vessel continues to engage in business with sanctioned entities and continues to exhibit obfuscatory shipping practices.

**B. <u>AIS SPOOFING</u>**

31. According to a commercially available database of shipping industry information, the TIFANI has spoofed its locations on multiple occasions, with the most recently known manipulation its Automatic Identification System ("AIS") occurring on or about November 14, 2025, through November 15, 2025. Many of the TIFANI's AIS spoofing events happened in or

around areas where ghost fleet tankers are known to engage in STS transfers, such as around the Malaysia/Singapore Eastern Outer Port Limits and off the United Arab Emirates.

32. AIS spoofing, or location spoofing, is a deceptive shipping practice that involves tampering with the vessel's AIS, a tool used to broadcast vessel position, vessel identity, vessel heading, and other critical information to nearby vessels and maritime authorities, initially used for collision avoidance.

33. AIS spoofing involves the deliberate falsification of AIS messages, misleading vessels and maritime authorities about a vessel's true location and identity, and potential illicit activity. This can be done by transmitting false AIS data or altering legitimate ones. By manipulating AIS transmissions, malicious actors, especially tankers operators, can obscure true vessel movements, or simulate fleet movements, creating significant security vulnerabilities. Spoofing is a method regularly deployed by individuals and entities involved in shipping illicit oil, including Iran-origin oil for the benefit of the IRGC, as spoofing makes it more difficult to detect an oil shipment's origins.

34. In addition to "spoofing," vessels engaged in shipping illicit oil may also completely turn off their AIS during periods, creating gaps in what is generally a continuous stream of AIS data broadcast. Such vessels most often do so when conducting sensitive activity such as loading or offloading illicit oil, at a port or via a ship-to-ship ("STS") transfer.

**C. <u>Historical Iran-Related Voyages by the TIFANI</u>**

35. According to information provided by a data and analytics company, the TIFANI has loaded more than 36 million barrels of Iran-origin crude oil directly from Iran, including from Kharg Island, Iran, since in or around June 2020, including the cargo currently onboard the vessel. In the same time period, the TIFANI also has received millions of barrels of Iran-origin oil via

STS transfer from vessels that loaded directly from Iran. Several such voyages conducted by the TIFANI are set out below.

**a. The TIFANI's 2025 Shipments of Iran-Origin Oil**

36. On or about February 25, 2025, the M/T HUMANITY (IMO 9180281) was captured by satellite imagery in the vicinity of Kharg Island, Iran. Several days later, on or about February 28, 2025, the HUMANITY loaded approximately 1.9 million barrels of Iran-origin crude oil. The HUMANITY, formerly known as the M/T OCEAN NYMPH, was originally designated by OFAC in or around March 2013 for its connections to the Iranian oil industry.



*The HUMANITY in the vicinity of Kharg Island, Iran on or about February 25, 2025*

37. On or about April 16, 2025, the HUMANITY transferred its 1.9 million barrels of Iran-origin oil cargo to the TIFANI via an STS transfer.



*The HUMANITY transferring its Iran-origin cargo to the TIFANI on or about April 16, 2025*

38. On or about May 6, 2025, the M/T SEA CLIFF (IMO 9569657) was captured by satellite imagery in the vicinity of Kharg Island, Iran. Several days later, on or about May 8, 2025, the SEA CLIFF loaded approximately 2 million barrels of Iran-origin crude oil. The SEA CLIFF, formerly known as the M/T SMOOTH, was originally designated by OFAC at least in or around December 2013 for its connections to the Iranian oil industry.



*The SEA CLIFF in the vicinity of Kharg Island, Iran on or about May 6, 2025*

39. On or about June 13, 2025, the SEA CLIFF transferred its 2 million barrels of Iran-origin oil cargo to the TIFANI via an STS transfer.



*The SEA CLIFF transferring its Iran-origin cargo to the TIFANI on or about June 13, 2025*

40. On or about November 15, 2025, the TIFANI loaded approximately 2 million barrels of Iran-origin crude oil from Kharg Island, Iran. Satellite imagery of this loading is unavailable.

41. On or about January 19, 2026, the TIFANI transferred its 2 million barrels of Iran-origin oil cargo to the M/T VITA I (IMO 9241114) via an STS transfer. On or about October 9, 2025, OFAC identified the VITA I as blocked property for its activities in support of the Iranian oil industry.



*The TIFANI transferring its Iran-origin cargo to the VITA I on or about January 19, 2026*

**b. The TIFANI's Current Voyage**

42. On or about April 6, 2026, satellite imagery captured the TIFANI loading approximately 2 million barrels of Iran-origin crude oil (*i.e.*, a part of the Defendant Property) from the T-Jetty at Kharg Island, Iran.



*Imagery of the TIFANI loading approximately 2 million barrels of Iran-origin crude oil at the T-Jetty of Kharg Island, Iran on or about April 6, 2026*

43. The TIFANI currently lists a destination in Asia, with an estimated date of arrival as on or about April 25, 2026. The vessel is currently southern tip of India's coastline and is projected to reach Singapore on or about April 25, 2026.

44. On or about April 20, 2026, eastern standard time, the United States Coast Guard communicated with the captain of the TIFANI to confirm its flag status. The captain indicated the vessel was Botswana-flagged. The United States communicated with Botswanan officials and confirmed that any vessel claiming their flag status is false. The TIFANI was subsequently treated as stateless and interdicted by the United States and remains in the custody and control of the United States.

**COUNT ONE – FORFEITURE**
**18 U.S.C. § 981(a)(1)(G)(i)**

45. The United States incorporates by reference the allegations set forth in Paragraphs 1 to 44 above as if fully set forth herein for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(G)(i).

46. The IRGC, including the IRGC-QF, is a designated foreign terrorist organization.

47. The Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(G)(i) because it affords persons (including, without limitation, NIOC, IOTC, NISOC, Windward) sources of influence over the IRGC, including the IRGC-QF, a designated foreign terrorist organization, which has engaged in planning and perpetrating federal crimes of terrorism as defined in 18 U.S.C. § 2332b(g)(5) against the United States, citizens or residents of the United States, or their property.

* * *

WHEREFORE, the plaintiff prays that all persons who reasonably appear to be potential claimants with interests in the Defendant Property be cited to appear herein and answer the complaint; that the defendant property be forfeited and condemned to the United States of America; that upon Final Decree of Forfeiture, the United States Marshal dispose of the defendant property according to law; and that the plaintiff have such other and further relief as this Court deems proper and just.

Dated: April 22, 2026
Washington, D.C.

Respectfully submitted,

Jeanine Ferris Pirro
United States Attorney

By: ______________________________

RAJBIR DATTA
N.Y Bar 5206073
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20579
(202) 252-7687
Rajbir.Datta@usdoj.gov

# VERIFICATION

I, Michael Talbot, a Special Agent with the Federal Bureau of Investigation, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me and/or furnished to me by other law enforcement representatives and that everything represented herein is true and correct.

Executed on this 22nd day of April 2026.

Special Agent Michael Talbot
Federal Bureau of Investigation

I, Serena Liss, a Special Agent with the Homeland Security Investigations, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me and/or furnished to me by other law enforcement representatives and that everything represented herein is true and correct

Executed on this 22nd day of April 2026.

Special Agent Serena Liss
Homeland Security Investigations