UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

MOTOR TANKER TIFANI WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 9273337, AND THE OIL CARGO LADEN THEREON,

Defendant *In Rem*,

Case: 1:26-cv-01373
Assigned To : Unassigned
Assign. Date : 4/22/2026
Description: Gen. Civil (E-DECK)

**FILED UNDER SEAL**

I, Gene Patton, declare and state:

1. My name is Gene Patton and I am Chief in the Program Operations Unit for the Department of Justice, Criminal Division. I have been in this position for 15 years. My duties include supervision and oversight of complex forfeiture matters. I declare the matters stated herein based on personal knowledge.

2. As part of my official duties, I have overseen the management and sale of complex assets, including commercial real estate, aircrafts, vessels and petroleum products.

3. From prior experience, I know that aircrafts, vessels and cargos pose unique challenges in asset management. These assets have maintenance and storage costs that far outstrip standard assets. The larger assets in these categories are particularly challenging to maintain, as crews may need to be retained for around the clock servicing, and only limited locations can store such items.

4. For these reasons, among others, the Department of Justice favors pre-forfeiture



RECEIVED
APR 22 2026
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

sale of property (*i.e.*, interlocutory sale) as a means of preserving asset value and mitigating asset expenses for seized assets subject to volatility in valuation or extreme management costs, seized assets requiring unique care or maintenance, seized assets that have unique security or safety concerns, or seized assets that have other extenuating circumstances. U.S. Department of Justice Asset Forfeiture Policy Manual (2025), Chap. 2, Sec. V.D, available at https://www.justice.gov/criminal/criminal-afmls/file/839521/dl?inline=.

5. I have managed numerous such sales for other complex assets and have found such sales to be an effective means of preserving the value of seized assets.

6. I have personally overseen the coordination and seizure of the M/T TIFANI bearing International Maritime Organization ("IMO") number 9273337 and all petroleum-product cargo aboard ("Defendant Property") and have managed the seizure and logistics of the seizure.

7. The Defendant Property, both the vessel and all petroleum-product cargo, is currently in the Indian Ocean.

8. I have consulted with companies about the costs associated with storing and maintaining the Defendant Property. Such consultations have revealed that daily custody and storage costs for the Defendant Property will quickly make a substantial dent in its value. Specifically:

a. Thus far, the United States is anticipating spending $15 million manning a custody crew, repairing serious safety and operational deficiencies, maintaining and transiting the M/T TIFANI. This amount will increase by approximately $5 million or more if the vessel remains in U.S. custody due to anticipated custody, transit, insurance, repairs and preparation for hurricane season.

b. The Defendant Property vessel has a current estimated net market or salvage value of approximately $3 million or less;

c. The Petroleum product cargo has a current estimated value between $130,000,000 and $140,000,000, depending on the quality of the petroleum and the frequently changing spot price for petroleum;

d. Storage costs for the petroleum cargo portion of the Defendant Property, is estimated to be $450,000 per month.

9. I have consulted with experts advising me about companies interested in purchasing the Defendant Property, pursuant to an interlocutory sales order.

10. Based on this information and my prior experience in managing similar assets, I have concluded that an interlocutory sale is needed to preserve the value of the Defendant Property.

11. When I am unable to obtain a commercially reasonable market value in an interlocutory sale for seized properties, I decline to execute the sale and go forward with the traditional process of maintaining the properties in the custody of the U.S. government.

12. Based on my consultations about the marketability and interested purchasers, I believe that I will be able to find a buyer who will pay a reasonable fair market price for the Defendant Property.

13. The net proceeds from any such sale, after payment of fees and expenses, would be held in an interest-bearing account maintained by the government pending the conclusion of the related forfeiture action.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 21st day of April 2026, in Washington, D.C.

B PATTON Digitally signed by B PATTON Date: 2026.04.21 12:22:57 -04'00'

GENE PATTON, Chief
Program Operations Unit
Criminal Division
U.S. Department of Justice