**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**MOTOR TANKER TIFANI WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 9273337, AND THE OIL CARGO LADEN THEREON,**

**Defendant.**

**Civil Action No. 26-1373 (JEB)**

**Under Seal**

**MEMORANDUM OPINION AND ORDER**

The United States seeks the forfeiture of an oil tanker (and its cargo) that has allegedly done business with the Islamic Republic of Iran. As an interlocutory step, it now moves to sell the tanker and cargo to avoid exorbitant monthly storage costs until the forfeiture proceedings have concluded. The Court will grant the Government's Motion but require it to propose steps for providing potential claimants with adequate notice before it initiates the sale process.

## I. Background

Iran has been designated a state sponsor of terrorism by the United States Department of State since 1984, and a branch of its military — the Islamic Revolutionary Guard Corps — was designated as a Foreign Terrorist Organization in 2019. See ECF No. 1 (Compl.), ¶¶ 6, 11, 17. As a consequence, all assets of the IRGC or that grant others "a source of influence" over that entity are subject to forfeiture under federal law. See 18 U.S.C. § 981(a)(1)(G)(i).

Those assets include the TIFANI, an oil tanker bearing the International Maritime Organization number 9273337. See Compl., ¶ 26. The Government alleges that the tanker "has a history of engaging in business with Iran" and other "sanctioned entities" — namely, trading in oil, while masking its location to do so. Id., ¶¶ 29–34. On April 20, 2026, the United States Coast Guard confirmed that the TIFANI was flying under the false flag of Botswana and interdicted the tanker as stateless. Id., ¶ 44. The Government then filed a Complaint seeking forfeiture and obtained a warrant to arrest the tanker *in rem*. See ECF No. 5 (Warrant). It then began to tow the TIFANI and its cargo across the Atlantic Ocean. See ECF No. 3 (Mot. Sale) at 2. The Government moved to seal this case, citing safety and criminal investigation concerns, see ECF No. 2 (Mot. Seal) at 3, and the Court granted that Motion. See ECF No. 4 (Seal Op.).

The Government now moves for interlocutory sale of the TIFANI and the oil it carries. Id. at 1. It seeks permission to sell the tanker to limit the monthly costs required to store it and the oil for the duration of the forfeiture proceedings. See generally id. at 2–4.

## II. Legal Standard

Forfeiture actions *in rem* are governed by Supplemental Rule G of the Federal Rules of Civil Procedure. That Rule permits a court to order the sale of a property subject to forfeiture in certain circumstances, including if "the expense of keeping the property is excessive or is disproportionate to its fair market value." Supp. R. G(7)(b)(i)(B). When considering a motion for interlocutory sale, "courts must carefully weigh the competing interests in each case." United States v. Hall, 877 F.3d 676, 685 (6th Cir. 2017) (quoting Fed. R. Civ. P. Supp. R. G(7) advisory committee notes on rules) (alterations removed). In the absence of "any criteria to guide the judge," however, district courts possess "considerable discretion" in "deciding what factors to consider, and what weight to give them" when determining whether to grant a motion for

interlocutory sale. United States v. Approximately 81,454 Cans of Baby Formula, 560 F.3d 638, 641 (7th Cir. 2009). If a court permits interlocutory sale, the resulting proceeds become "a substitute res subject to forfeiture in place of the property that was sold," to be held by the Government until the forfeiture action is resolved. See Supp. R. G(7)(b)(iv).

## III. Analysis

The Court first considers whether interlocutory sale is warranted under Supplemental Rule G(7)'s conditions. It then addresses potential due-process concerns stemming from this case's sealed status.

### A. Merits

The Government's main contention is that the costs incurred by storing the TIFANI and its cargo would "quickly offset the value" of the property. See Mot. Sale at 2. Its Motion and accompanying declaration state that the tanker has an estimated value of approximately $3 million and the oil it carries is worth between $130 million and $140 million. Id.; see also ECF No. 1-1 (Gene Patton Declaration), ¶ 8. Storing and maintaining the tanker in United States custody is estimated to cost approximately $5 million and the oil-storage cost clocks in at $450,000 per month. See Patton Decl., ¶ 8.

Storing the TIFANI would cause the United States to incur costs that are patently "disproportionate to its fair market value," Supp. R. G(7)(b)(i)(B): the $5 million storage cost swamps the tanker's estimated sale price. See Patton Decl., ¶ 8. The Court finds that a storage cost exceeding 100% of the property's value is both excessive and disproportionate, and that avoiding such net loss weighs in favor of interlocutory sale. Cf. GB Cap. Holdings v. S/V Glori B, 2019 WL 277387, at *4 (S.D. Cal. Jan. 22, 2019) (expenses of nearly $19,000 excessive where fair market value is $6,000).

The ratio of value to cost of the accompanying oil is not nearly as overwhelming. While $450,000 per month is high in absolute terms, it amounts to approximately 0.3% of the cargo's value at the high end. See Patton Decl., ¶ 8. Where high storage costs are outstripped by a commensurately large property value or claimed damages, courts are split on whether interlocutory sale is appropriate. Compare Centennial Bank v. M/Y MARLUV, 808 F. Supp. 3d 1080, 1085 (C.D. Cal. 2025) (monthly fees of $6,900, or 0.7% of estimated value, deemed excessive), with Pen Air Credit Union v. FAN-DANE-GO, 2026 WL 1188472, at *2 (D.N.J. Apr. 30, 2026) (costs exceeding $5,000 monthly not excessive given high damages sought); cf. United States v. M/Y Amadea, 2024 WL 2946071, at *4 (S.D.N.Y. 2024) (reasoning that costs are only "excessive" if higher than usual industry costs). Other courts have granted motions for interlocutory sale when custodial expenses approach thousands of dollars per month without reference to the property's value. See, e.g., AmericanWest Bank v. P/V INDIAN, 2013 WL 784756, at *3 (S.D. Cal. Mar. 1, 2013).

Lacking clear direction from the anticipated storage costs alone, the Court weighs the competing interests of various claimants to the property or its proceeds. See Hall, 877 F.3d at 685 (endorsing such approach). Should the Government ultimately succeed on its forfeiture action, proceeds from a later sale of the oil would be funneled to the U.S. Victims of State Sponsored Terrorism Fund. See 34 U.S.C. § 20144(e)(2)(A). Additional storage costs therefore directly reduce potential funds available to victims. Accord Mot. Sale at 4; see also United States v. Real Prop. Located at 272 Old Montauk Highway, 298 F.R.D. 43, 52 (E.D.N.Y. 2014) (siphoning funds available to victims weighs in favor of interlocutory sale). The oil itself, moreover, is unlikely to hold particular value to any claimant who might come forward during the forfeiture proceedings. The value of the oil lies in its eventual sale, so authorizing

interlocutory sale is unlikely to threaten another party's interests. The Court thus finds that there is good cause to grant the Government's Motion. See Supp. R. G(7)(b)(i)(D).

B. Due Process

The Court is concerned, however, that no potential claimant with an interest in the property has been notified of these proceedings or the Government's attempt to sell the TIFANI and its cargo because the case remains under seal. See Seal Op. (granting Government Motion to Seal Case). The Due Process Clause requires at least reasonable notice to interested parties to prevent unconstitutional deprivation of property. United States v. Steel Tank Barge H 1651, 272 F. Supp. 658, 662–63 (E.D. La. 1967) (vacating prior authorization for interlocutory sale where "the notice requirement inherent in Due Process was not satisfied"); see also United States v. Maye, 2011 WL 2533020, at *2 (W.D.N.Y. June 24, 2011) (party with interest is "entitled to notice of any motion for interlocutory sale and an opportunity to be heard") (citing United States v. King, 2010 WL 4739791, at *4 (S.D.N.Y. Nov. 12, 2010) (similar)); but see Ferrous Fin. Servs. Co. v. O/S Arctic Producer, 567 F. Supp. 400, 401 (W.D. Wash. 1983) ("The interlocutory sale of a vessel is not a deprivation of property but rather a necessary substitution of the proceeds of the sale, with all of the constitutional safeguards necessitated by the *in rem* process."). Here, there has been no notice at all.

The Court remains mindful that the Government sought to seal this case because of its ongoing criminal investigation and the vessel's in-transit status. See Mot. Seal at 3. The Court will therefore permit the Government to propose next steps by June 2, 2026, that would reasonably notify potential claimants to the TIFANI and its cargo, including the tanker's registered owner and manager. See Compl., ¶¶ 27–28. Such proposal should precede any sale of the tanker and its cargo. See Supp. R. G(7)(b)(iii) (interlocutory sale of personal property

governed by 28 U.S.C. § 2004, which in turn provides sale procedures "unless the court orders otherwise").

## IV. Conclusion

The Court ORDERS that:

1. The Government's Motion for Interlocutory Sale is GRANTED; and
2. The Government shall file a status report by June 2, 2026, proposing a method by which it will notify potential claimants with an interest in the defendant property prior to the sale's completion.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: May 19, 2026