**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br>v.<br>MOTOR TANKER TIFANI WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 9273337, AND THE OIL CARGO LADEN THEREON,<br><br>Defendants *In Rem*. | Civil Action No. 1:26-cv-01373-JEB |

**NOTICE OF VERIFIED CLAIM AND STATEMENT OF INTEREST OR RIGHT IN PROPERTY SUBJECT TO FORFEITURE IN REM**

The claimants ("Claimants") are victims of state-sponsored terrorism who hold judgments against the Islamic Republic of Iran ("Iran") which total more than $1,500,000,000.00 in compensatory damages under 28 U.S.C. § 1605A[1], through the following actions:

- *Ewan, et al. v. Islamic Republic of Iran*, Case No. 17-1628-JDB (D.D.C.) ("*Ewan* Action");
- *Bland, et al. v. Islamic Republic of Iran*, Case No. 05-02124 (D.D.C.) ("*Bland* Action");
- *Brown, et al. v. Islamic Republic of Iran*, Case No. 08-00531 (D.D.C.) ("*Brown* Action");
- *Bova, et al. v. Islamic Republic of Iran*, Case No. 15-01074 (D.D.C.) ("*Bova* Action");
- *Valore, et al. v. Islamic Republic of Iran*, Case No. 03-01959 (D.D.C.) ("*Valore* Action");

[1] A full list of Claimants and the compensatory damages they have been awarded is included as Exhibit A.

- *Spencer, et al. v. Islamic Republic of Iran*, Case No. 12-00042 (D.D.C.) ("*Spencer* Action");
- *Ayers, et al. v. Islamic Republic of Iran*, Case No. 18-00265 (D.D.C.) ("*Ayers* Action");
- *Roth, et al. v. Islamic Republic of Iran*, Case No. 11-01377 (D.D.C.) ("*Roth* Action");
- *Aronow, et al. v. Islamic Republic of Iran*, Case No. 18-cv-12001-GBD (S.D.N.Y.) ("*Aronow* Action");
- *Ashton, et al. v. Islamic Republic of Iran*, Case No. 1:02-cv-06977 (S.D.N.Y.) ("*Ashton* Action");
- *Estate of Max Steinberg, et al. v. Islamic Republic of Iran*, Case No. 17-cv-1910-RCL (D.D.C.) ("*Steinberg* Action");
- *Selig, et al. v. Islamic Republic of Iran*, Case No. 1:19-cv-02889-TNM (D.D.C.) ("*Selig* Action");
- *Estate of Judah Herzel Henkin, et al. v. Islamic Republic of Iran*, Case No. 1:18-cv-1273-RCL (D.D.C.) ("*Henkin* Action");
- *Wang, et al. v. Islamic Republic of Iran*, Case No. 22-cv-583-TJK (D.D.C.) ("*Wang* Action");
- *Kenny, et al. v. Islamic Republic of Iran*, Case No. 1:22-cv-03299-TNM (D.D.C.) ("*Kenny* Action");
- *Fuld, et al. v. Islamic Republic of Iran*, Case No. 20-cv-2444-RCL (D.D.C.) ("*Fuld* Action");
- *Baxter, et al. v. Islamic Republic of Iran*, Case No. 11-02133 (D.D.C.) ("*Baxter* Action");

- *Boothe, et al. v. Islamic Republic of Iran*, Case No. 22-1747 (D.D.C.) ("*Boothe* Action");
- *Namazi, et al. v. Islamic Republic of Iran*, Case No. 24-3506 (D.D.C.) ("*Namazi* Action").

Claimants properly served, or in the process of serving, their respective judgments on Iran through diplomatic means under 28 U.S.C. § 1608(a)(4).[2]

The Claimants learned about this forfeiture action and the evidence set forth in the complaint at ECF No. 1 in *United States of America v. Motor Tanker Tifani with International Maritime Organization Number 9273337, and the Oil Cargo Laden Thereon,* No. 1:26-cv-01373-JEB, pending in this District (the "*Tifani* Action"). The Government's complaint states the Defendant Motor Tanker (the "*Tifani*") is owned by World Crew Provider NV ("World Crew") and is managed and operated by ENSA Ship Management Private Limited ("ENSA"), an entity listed and designated as "blocked" on the Specially Designated Nationals and Blocked Persons ("SDN") List by the Office of Foreign Assets Control ("OFAC") pursuant to Executive Order 13846. *Tifani* Action, ECF No. 1 ¶¶ 26–30. The *Tifani* was also identified as blocked property in which ENSA has an interest. *Id*.

The Government's complaint explains the Defendant Petroleum Assets ("Petroleum Assets," and together with the *Tifani*, "Defendant Property") are of Iranian origin and were shipped on behalf of agents or instrumentalities of the Iranian government. *Id*. ¶¶ 6–30, 42–44. Based on

[2] *See Ewan* Action, ECF No. 44; *Bland* Action, ECF No. 82; *Brown* Action, ECF No. 66; *Bova* Action, ECF No. 117; *Valore* Action, ECF No. 83; *Spencer* Action, ECF No. 59; *Ayers* Action, ECF No. 77; *Roth* Action, ECF No. 48; *Aronow* Action, ECF No. 28; *Ashton* Action, ECF No. 1580; *Steinberg* Action, ECF No. 30; *Selig* Action, ECF No. 42; *Henkin* Action, ECF No. 63; *Wang* Action, ECF No. 30; *Kenny* Action, ECF No. 41; *Fuld* Action, ECF No. 38; *Baxter* Action, ECF No. 142; *Boothe* Action, ECF No. 44; *Namazi* Action, ECF No. 26.

those factual averments, the Claimants promptly filed this Notice of Verified Claim ("Notice") asserting their interest in the Defendant Property.[3]

According to the Government, the *Tifani* has carried millions of barrels of Iranian crude oil for the benefit of Iran in defiance of international sanctions. *See Tifani* Action, ECF No. 1 ¶¶ 35–44. World Crew and ENSA materially support Iran's efforts to evade U.S. sanctions by falsifying the registration of Iran-linked vessels under the Botswana flag. *Id.* ¶¶ 42–44. Through this scheme, ENSA has transported more than 36 million barrels of Iranian oil on the *Tifani*, including the 2 million barrels of Iran-origin oil currently aboard the vessel. *Id.* ¶¶ 35, 42–44.

Based on the information established by the Government in the *Tifani* Action, the Claimants are entitled to attach and execute on the property of Iran and its agencies and instrumentalities—including World Crew and ENSA—"[n]otwithstanding any other provision of law" under the Terrorism Risk Insurance Act ("TRIA"). Pub. L. No. 107-297, 116 Stat. 2322 (2002), codified at 28 U.S.C. § 1610 note.

The Claimants filed this Notice to assert their superior interests in the Defendant Property and all proceeds traceable thereto as may ultimately be necessary to satisfy the Claimants' outstanding compensatory damages judgments against Iran, plus post-judgment interest thereon, as listed in Exhibit A.[4] Under TRIA, the Claimants' interest in the *Tifani* and Petroleum Assets is senior to any interest of the U.S. Government or any other non-TRIA claimant.

In support of this Notice, the Claimants state as follows:

## I. The Claimants' Judgments Against Iran

### A. Claimants in the *Ewan* Action

[3] Claimants' Verified Claims are attached as Exhibit B.

[4] Because the value of petroleum and oil varies widely from day to day, the amount of petroleum and oil necessary to satisfy the Claimants' respective judgments cannot be determined until the assets are transferred or otherwise liquidated in satisfaction of the judgments.

1. The Claimants in the *Ewan* Action include individuals who were injured in the 1983 bombing of the U.S. Embassy in Beirut ("Beirut Embassy Bombing") sponsored by Iran, their estates, and family members.

2. In 2020, the United States District Court for the District of Columbia entered judgment under 28 U.S.C. § 1605A against Iran for the damages the Claimants in the *Ewan* Action suffered because of the Beirut Embassy Bombing.

3. The amount of compensatory damages awarded to the Claimants in the *Ewan* Action totals $11,659,570.00 without prejudgment interest. Claimants were also awarded $2,637,000.00 in punitive damages. *See Ewan* Action, ECF No. 39.

4. To date, Iran has not paid any portion of any of the judgment awarded to the Claimants in the *Ewan* Action. The Claimants' judgment in the *Ewan* Action continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

**B. Claimants in the *Bland* Action**

5. The Claimants in the *Bland* Action include individuals who were injured in the 1983 bombing of the U.S. Marine Barracks in Beirut ("Marine Barracks Bombing") sponsored by Iran, their estates, and family members.

6. In 2011, the United States District Court for the District of Columbia entered judgment under 28 U.S.C. § 1605A against Iran for the damages the Claimants in the *Bland* Action suffered because of the Marine Barracks Bombing.

7. The amount of compensatory damages awarded to the Claimants in the *Bland* Action totals $277,805,908.00. The amount of punitive damages awarded to the Claimants totals $955,652,324.00. *See Bland* Action, ECF No. 69.

8. To date, Iran has not paid any portion of any of the judgment awarded to the Claimants in the *Bland* Action. The Claimants' judgment in the *Bland* Action continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

**C. Claimants in the *Brown* Action**

9. The Claimants in the *Brown* Action include individuals who were injured in the Marine Barracks Bombing sponsored by Iran, their estates, and family members.

10. In 2012, the United States District Court for the District of Columbia entered an order against Iran for the damages the Claimants in the *Brown* Action suffered because of the Marine Barracks Bombing.

11. The amount of compensatory damages awarded to the Claimants in the *Brown* Action totals $183,281,294.00. The amount of punitive damages awarded to Claimants totals $630,487,651.00. *See Brown* Action, ECF No. 57.

12. To date, Iran has not paid any portion of any of the judgment awarded to the Claimants in the *Brown* Action. The Claimants' judgment in the *Brown* Action continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

**D. Claimants in the *Bova* Action**

13. The Claimants in the *Bova* Action include individuals who were injured in the Marine Barracks Bombing sponsored by Iran, their estates, and family members.

14. In 2020, the United States District Court for the District of Columbia entered judgment under 28 U.S.C. § 1605A against Iran for the damages the Claimants in the *Bova* Action suffered because of the Marine Barracks Bombing.

15. The total amount of compensatory damages awarded to the Claimants in the *Bova* Action totals $28,657,942.00. The total amount of punitive damages awarded to Claimants totals $98,583,320.00. *See Bova* Action, ECF No. 110.

16. To date, Iran has not paid any portion of any of the judgment awarded to the Claimants in the *Bova* Action. The Claimants' judgment in the *Bova* Action continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

**E. Claimants in the *Valore* Action**

17. The Claimants in the *Valore* Action include individuals who were injured in the Marine Barracks Bombing sponsored by Iran, their estates, and family members.

18. In 2010, the United States District Court for the District of Columbia entered judgment under 28 U.S.C. § 1605A against Iran for the damages the Claimants in the *Valore* Action suffered because of the Marine Barracks Bombing.

19. The amount of compensatory damages awarded to the Claimants in the *Valore* Action totals $12,565,922.00. *See Valore* Action, ECF No. 60.

20. To date, Iran has not paid any portion of any of the judgment awarded to the Claimants in the *Valore* Action. The Claimants' judgment in the *Valore* Action continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

**F. Claimants in the *Spencer* Action**

21. The Claimants in the *Spencer* Action include individuals who were injured in the Beirut Embassy Bombing sponsored by Iran, their estates, and family members.

22. In 2014, the United States District Court for the District of Columbia entered judgment under 28 U.S.C. § 1605A against Iran for the damages the Claimants in the *Spencer* Action suffered because of the Marine Barracks Bombing.

23. The amount of compensatory damages awarded to the Claimants in the *Spencer* Action totals $9,350,000.00. The amount of punitive damages awarded totals $32,164,000.00. *See Spencer* Action, ECF No. 51.

24. To date, Iran has not paid any portion of the judgment awarded to the Claimants in the *Spencer* Action. The Claimants' judgment in the *Spencer* Action continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

**G. Claimants in the *Ayers* Action**

25. The Claimants in the *Ayers* Action include individuals who were injured in the Marine Barracks Bombing sponsored by Iran, their estates, and family members.

26. In 2022, the United States District Court for the District of Columbia entered judgment under 28 U.S.C. § 1605A against Iran for the damages the Claimants in the *Ayers* Action suffered because of the Marine Barracks Bombing.

27. The amount of compensatory damages awarded to the Claimants in the *Ayers* Action totals $73,306,625.00. The amount of punitive damages awarded to the Claimants in the *Ayers* Action totals $252,174,790.00. *See Ayers* Action, ECF No. 69.

28. To date, Iran has not paid any portion of any of the judgment awarded to the Claimants in the *Ayers* Action. The Claimants' judgment in the *Ayers* Action continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

**H. Claimants in the *Roth* Action**

29. The Claimants in the *Roth* Action include individuals who were injured in a bombing of the Sbarro Pizza restaurant located in Jerusalem, Israel ("Sbarro Bombing") on August 9, 2001. The attack was carried out by HAMAS, with the material support of Iran.

30. In 2015, the United States District Court for the District of Columbia entered judgment under 28 U.S.C. § 1605A against Iran for the damages the Claimants in the *Roth* Action suffered because of the Sbarro Bombing.

31. The amount of compensatory damages awarded to the Claimants in the *Roth* Action totals $18,691,019.00. The amount of punitive damages awarded to Claimants is $112,500,000.00. *See Roth* Action, ECF No. 43.

32. To date, Iran has not paid any portion of any of the judgment awarded to the Claimants in the *Roth* Action. The Claimants' judgment in the *Roth* Action continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

### I. Claimants in the *Aronow* Action

33. The Claimants in the *Aronow* Action include individuals who were killed in the September 11, 2001 Terrorist Attack sponsored by Iran, as well as the spouses, parents, children, siblings, and estates of those individuals, including the estates of such spouses, parents, children, and siblings.

34. In 2019, the United States District Court for the Southern District of New York entered an order of judgment under 28 U.S.C. § 1605A as to liability and for partial final default judgments against Iran for the damages the Claimants in the *Aronow* Action suffered because of the September 11, 2001 Terrorist Attack.

35. The amount of compensatory damages awarded to the Claimants in the *Aronow* Action totals $95,604,376.00. *See Aronow* Action, ECF No. 22.

36. To date, Iran has not paid any portion of any of the judgment awarded to the Claimants in the *Aronow* Action. The Claimants' judgment in the *Aronow* Action continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

### J. Claimants in the *Ashton* Action

37. The Claimants in the *Ashton* Action include individuals who were killed in the September 11, 2001 Terrorist Attack sponsored by Iran, as well as the spouses, parents, children, siblings, and estates of those individuals, including the estates of such spouses, parents, children, and siblings.

38. In 2019, the United States District Court for the Southern District of New York entered an order of judgment under 28 U.S.C. § 1605A as to liability and for partial final default judgments against Iran for the damages the Claimants in the *Ashton* Action suffered because of the September 11, 2001 Terrorist Attack.

39. The compensatory damages awarded to the Claimants in the *Ashton* Action total $12,500,000.00. *See Ashton* Action, ECF No. 1047.[5]

40. To date, Iran has not paid any portion of any of the judgment awarded to the Claimants in the *Ashton* Action. The Claimants' judgment in the *Ashton* Action continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

### K. Claimants in the *Steinberg* Action

41. The Claimants in the *Steinberg* Action include the estate of Max Steinberg ("Mr. Steinberg"), and Mr. Steinberg's family members. Mr. Steinberg was an American citizen who was murdered on July 20, 2014, in a terrorist attack carried out by HAMAS with the sponsorship and material support of Iran.

[5] Service of the judgment in the *Ashton* Action has been initiated by the U.S. Department of State through diplomatic means pursuant to 28 U.S.C. § 1608(a)(4). Service was handled by other counsel, and Claimants have not yet obtained proof of service. Upon obtaining proof of service, Claimants will promptly file it with the Court as a supplemental exhibit.

42. In 2019, the United States District Court for the District of Columbia entered judgment under 28 U.S.C. § 1605A against Iran for the damages the Claimants in the *Steinberg* Action suffered because of the terrorist attack that killed Mr. Steinberg.

43. The amount of compensatory damages awarded to the Claimants in the *Steinberg* Action totals $15,934,010.00. The amount of punitive damages awarded to Claimants totals $150,000,000.00. *See Steinberg* Action, ECF No. 19.

44. To date, Iran has not paid any portion of any of the judgment awarded to the Claimants in the *Steinberg* Action. The Claimants' judgment in the *Steinberg* Action continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

**L. Claimants in the *Selig* Action**

45. The Claimants in the *Selig* Action are individuals who were injured in, or whose family members were killed in, the terrorist attack at the Intercontinental Hotel in Kabul, Afghanistan (the "Intercontinental Hotel Attack"), or the May 13–14, 2015 terrorist attack at the Park Palace Hotel in Kabul (the "Park Palace Hotel Attack"), as well as the estates and family members of those victims. Like the Intercontinental Hotel Attack, the Park Palace Hotel Attack was carried out by the Afghan Taliban with the sponsorship and material support of Iran.

46. In 2021, the United States District Court for the District of Columbia entered judgment under 28 U.S.C. § 1605A against Iran for the damages the Claimants in the *Selig* Action suffered because of the Intercontinental Hotel and Park Palace Hotel Attacks.

47. The amount of compensatory damages awarded to the Claimants in the *Selig* Action totals $68,022,627.00. The amount of punitive damages awarded to Claimants totals $68,022,627.00. *See Selig* Action, ECF No. 36.

48. To date, Iran has not paid any portion of any of the judgment awarded to the Claimants in the *Selig* Action. The Claimants' judgment in the *Selig* Action continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

**M. Claimants in the *Henkin* Action**

49. The Claimants in the *Henkin* Action include the family members of Eitam Simon Henkin ("Mr. Henkin"), and the estates of these family members. Mr. Henkin was an American citizen who was murdered on October 1, 2015, when he, his wife, and four children were driving past the town of Beit Furik in the West Bank of Palestine and HAMAS—with Iran's sponsorship and material support—killed Mr. Henkin and his wife.

50. In 2023, the United States District Court for the District of Columbia entered judgment under 28 U.S.C. § 1605A against Iran for the damages the Claimants in the *Henkin* Action suffered because of the terrorist attack that killed Mr. Henkin.

51. The amount of compensatory damages awarded to the Claimants in the *Henkin* Action totals $22,500,000.00. The amount of punitive damages awarded to Claimants totals $67,500,000.00. *See Henkin* Action, ECF No. 52.

52. To date, Iran has not paid any portion of any of the judgment awarded to the Claimants in the *Henkin* Action. The Claimants' judgment in the *Henkin* Action continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

**N. Claimants in the *Wang* Action**

53. The Claimants in the *Wang* Action include Xiyue Wang ("Mr. Wang"), who was wrongfully imprisoned and tortured in Iran's infamous Evin Prison for forty months or 1,216 days, and Mr. Wang's family members.

54. In 2025, the United States District Court for the District of Columbia entered judgment under 28 U.S.C. § 1605A against Iran for the damages the Claimants in the *Wang* Action suffered because of Iran's wrongful imprisonment and torture of Mr. Wang.

55. The amount of compensatory damages awarded to the Claimants in the *Wang* Action totals $29,885,283.00. The amount of punitive damages awarded to Claimants totals $29,885,283.00. *See Wang* Action, ECF No. 24.

56. To date, Iran has not paid any portion of any of the judgment awarded to the Claimants in the *Wang* Action. The Claimants' judgment in the *Wang* Action continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

**O. Claimants in the *Kenny* Action**

57. The Claimants in the *Kenny* Action are individuals who were injured in, or whose family members were killed in, the January 20–21, 2018 terrorist attack at the Intercontinental Hotel, as well as the estates and family members of those victims. The Afghan Taliban carried out the Intercontinental Hotel Attack with the sponsorship and material support of Iran.

58. In 2024, the United States District Court for the District of Columbia entered judgment under 28 U.S.C. § 1605A against Iran for the damages the Claimants in the *Kenny* Action suffered because of the Intercontinental Hotel Attack.

59. The amount of compensatory damages awarded to the Claimants in the *Kenny* Action totals $18,750,000.00. The amount of punitive damages awarded to Claimants totals $18,750,000.00. *See Kenny* Action, ECF No. 24.

60. To date, Iran has not paid any portion of any of the judgment awarded to the Claimants in the *Kenny* Action. The Claimants' judgment in the *Kenny* Action continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

**P. Claimants in the *Fuld* Action**

61. The Claimants in the *Fuld* Action include the Estate of Ari Fuld ("Mr. Fuld") and the family members of Mr. Fuld. Mr. Fuld was an American citizen who was murdered on September 16, 2018, near the Gush Etzion junction in Israel in a terrorist attack committed by HAMAS with Iran's sponsorship and material support.

62. In 2024, the United States District Court for the District of Columbia entered judgment under 28 U.S.C. § 1605A against Iran for the damages the Claimants in the *Fuld* Action suffered because of the terrorist attack that killed Mr. Fuld.

63. The amount of damages awarded to the Claimants in the *Fuld* Action totals $47,812,737.00 in compensatory damages. The amount of punitive damages awarded to Claimants totals $143,438,211.00. *See Fuld* Action, ECF No. 29.

64. To date, Iran has not paid any portion of any of the judgment awarded to the Claimants in the *Fuld* Action. The Claimants' judgment in the *Fuld* Action continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

**Q. Claimants in the *Baxter* Action**

65. The Claimants in the *Baxter* Action include William J. Baxter ("Mr. Baxter") and the family members of Mr. Baxter. Mr. Baxter is an American citizen who was severely injured on April 30, 2003 at a music venue in Tel Aviv, Israel in a terrorist bombing committed by HAMAS with Iran's sponsorship and material support.

66. In 2025, the United States District Court for the District of Columbia entered judgment under 28 U.S.C. § 1605A against Iran for the damages the Claimants in the *Baxter* Action suffered because of a series of terrorist attacks carried out by Iran and its terrorist proxies, including the terror attack that severely injured Mr. Baxter.

67. The amount of compensatory damages awarded to the Claimants in the *Baxter* Action totals $465,226,233.75. The amount of punitive damages awarded to Claimants totals $1,600,378,244.10. *See Baxter* Action, ECF No. 130.

68. To date, Iran has not paid any portion of any of the judgment awarded to the Claimants in the *Baxter* Action. The Claimants' judgment in the *Baxter* Action continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

**R. Claimants in the *Boothe* Action**

69. The Claimants in the *Boothe* Action include Captain Shastri Boothe ("Mr. Boothe") and his minor child. Mr. Boothe is an American citizen who served in Afghanistan as a member of the U.S. Army. On August 7, 2012, Mr. Boothe was injured in a motor truck bomb terrorist attack committed by terrorists supported by Iran in Logar Province, Afghanistan.

70. In 2026, the United States District Court for the District of Columbia entered judgment under 28 U.S.C. § 1605A against Iran for the damages the Claimants in the *Boothe* Action suffered because of a series of terrorist attacks carried out by Iran and its terrorist proxies, including the terror attack that severely injured Mr. Boothe.

71. The amount of compensatory damages awarded to the Claimants in the *Boothe* Action totals $38,618,139.00. The amount of punitive damages awarded to Claimants totals $38,618,139.00. *See Boothe* Action, ECF No. 35.[6]

72. To date, Iran has not paid any portion of any of the judgment awarded to the Claimants in the *Boothe* Action. The Claimants' judgment in the *Boothe* Action continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

[6] Service of the judgment in the *Boothe* Action has been initiated by the U.S. Department of State through diplomatic means pursuant to 28 U.S.C. § 1608(a)(4). Proof of service will be filed with the Court upon receipt of notice of same.

### S. Claimants in the *Namazi* Action

73. The Claimants in the *Namazi* Action include Mr. Siamak Namazi and Mr. Mohammad Baquer Namazi. Both Claimants are American citizens who were detained, arrested, taken hostage, and caused to be imprisoned on false charges by Iran. Mr. Siamak Namazi was held in Iran for more than eight years. Mr. Mohammad Baquer Namazi was held in Iran for more than six years.

74. In 2026, the United States District Court for the District of Columbia entered judgment under 28 U.S.C. § 1605A against Iran for the damages the Claimants in the *Namazi* Action suffered because of their arrest and false imprisonment, and the torture they suffered at the hands of agents of Iran.

75. The amount of compensatory damages awarded to the Claimants in the *Namazi* Action totals $60,894,586.00. The amount of punitive damages awarded to Claimants totals $60,894,586.00. *See Namazi* Action, ECF No. 21.[7]

76. To date, Iran has not paid any portion of any of the judgment awarded to the Claimants in the *Namazi* Action. The Claimants' judgment in the *Namazi* Action continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

## II. The *Tifani* and Petroleum Assets Belong to, or Serve to Benefit, the Government of Iran.

77. The evidence cited in the *Tifani* Action ties the Defendant Property directly to the Iranian government. *See generally Tifani* Action, ECF No. 1.

[7] Service of the judgment in the *Namazi* Action has been initiated by the U.S. Department of State through diplomatic means pursuant to 28 U.S.C. § 1608(a)(4). Proof of service will be filed with the Court upon receipt of notice of same.

78. The Government's complaint revealed extensive evidence—including careful tracking via satellite, analysis of falsified satellite positioning data, and commercial shipping records—demonstrating the *Tifani's* history of transporting Iran-origin petroleum, including when the United States interdicted it on or about April 25, 2026 while, it was fully laden with Iran-origin crude oil from Kharg Oil Terminal in Iran. *See generally Tifani* Action, ECF No. 1 ¶¶ 35–44.

79. Since the 1979 Iranian Revolution, Iran has faced comprehensive U.S. sanctions aimed at combatting its capacity and willingness to sponsor terrorist operations. *See, e.g.*, Exec. Order No. 13599, 77 Fed. Reg. 6659, 6659 (Feb. 5, 2012) (blocking assets in which Iran or its agencies and instrumentalities have an interest). These include U.S. sanctions on Iranian-linked entities like the Islamic Revolutionary Guard Corps-Qods Force ("IRGC-QF"), which provides material support to Iran's terrorist proxies across the Middle East; the National Iranian Oil Company ("NIOC"), which "materially assist[s], sponsor[s], or provide[s] financial, material, or technological support for" the IRGC-QF through the sale of Iran-origin petroleum resources; and the Iranian Oil Terminals Company ("IOTC") as a subsidiary of NIOC. *See Tifani* Action, ECF No. 1 ¶¶ 6–25.

80. The IOTC operates the Kharg Oil Terminal, an oil export terminal located in Iran on Kharg Island. *Tifani* Action, ECF No. 1 ¶ 23. The Kharg Oil Terminal receives oil via pipeline from Iran's South Oil Fields, which are operated by a subsidiary of NIOC. *Id*. ¶¶ 24–25.

81. On or about April 6, 2026, the *Tifani* made a port call at the Kharg Oil Terminal where it loaded approximately 2 million barrels of Iran-origin oil. *Tifani* Action, ECF No. 1 ¶¶ 42–44.

82. Following that port call, the United States Coast Guard communicated with the captain of the *Tifani* to confirm its flag status on or about April 20, 2026. *Id*. ¶ 44. The captain falsely stated the vessel was Botswana-flagged. *Id*.

83. The United States then contacted Botswanan officials and confirmed the captain's communication was false. *Id*. The United States then identified the *Tifani* as a stateless vessel and interdicted it. *Id*. The *Tifani* remains in the custody and control of the United States. *Id*.

**III. Under TRIA, Claimants Have a Senior Interest in the *Tifani* and Petroleum Assets.**

84. To state a claim for their senior interest in the Defendant Property, the Claimants need only assert a "facially colorable interest" in the property at issue. *United States v. Ross*, 161 F.4th 100, 109 (2d Cir. 2025) (citation omitted). "[W]hether [they] ultimately prove [] the existence of that interest is a question for a later stage in the proceedings." *Id*. at 110 (citation omitted). Here, the facts alleged in the Government's complaint and the Claimants' judgments establish that the Claimants possess more than a "facially colorable interest" in the Defendant Property.

85. The Claimants hold judgments against Iran for deaths, injuries, and other harms resulting from acts of terrorism sponsored by Iran. Because World Crew, ENSA, and the NIOC are known agents or instrumentalities of Iran, TRIA entitles the Claimants to execute on the Defendant Property to satisfy their judgments. TRIA § 201(a). Accordingly, the Claimants' interests in the *Tifani* and Petroleum Assets permit the Claimants to pursue the satisfaction of their judgments here.

86. TRIA provides that "[n]otwithstanding any other provision of law," those who hold judgments against a "terrorist party" may execute on the "blocked assets" of that terrorist party or its "agency or instrumentality" "to satisfy such judgment to the extent of any compensatory

damages." Pub. L. No. 107-297, § 201(a), 116 Stat. 2322, 2337 (2002), codified at 28 U.S.C. § 1610 note.

87. TRIA's cornerstone is the statute's broad "notwithstanding" clause, which aims to "enable" victims "to execute on" terrorists' assets by preventing other provisions of law from "bar[ring] victims' efforts to enforce [their] judgments." *Ministry of Def. & Support for the Armed Forces of Islamic Republic of Iran v. Elahi*, 556 U.S. 366, 391–92 (2009) (Kennedy, J., concurring). That clause "mak[es] plain that the force of the [statute] extends everywhere" and "supersede[s] all other laws." *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 49 (2d Cir. 2010) (citation omitted).

88. Because it expressly overrides conflicting laws, TRIA necessarily surpasses "the civil-forfeiture statute." *Est. of Levin v. Wells Fargo Bank, N.A.*, 156 F.4th 632, 643 n.1 (D.C. Cir. 2025); *see also United States v. All Petroleum-Prod. Cargo Aboard the Achilleas with Int'l Mar. Org. No. 9398072*, No. 21-0305 (PLF), 2026 WL 2618380, at *8 (D.D.C. Sept. 4, 2026) ("TRIA overrides" the civil forfeiture statute's "execution-related barrier to [the Claimant's] recovery").

89. Taken together, the Claimants' judgments and the facts confirmed by the Government in the *Tifani* Action satisfy all of TRIA's requirements and, in turn, establish the Claimants' senior interest in the Defendant Property over the Government and any non-TRIA claimant. In summary:

- The Claimants hold judgments for compensatory damages against Iran arising from acts of terrorism under 28 U.S.C. § 1605A;
- Iran is a "terrorist party" because it has been designated as a state sponsor of terrorism. *See* TRIA § 201(d)(4); Executive Order No. 13,599, 77 Fed. Reg. 6,659 (Feb. 5, 2012);

- ENSA and NIOC qualify and have been designated as agencies or instrumentalities of Iran because they materially assist Iran in evading U.S. sanctions and facilitate the movement and sale of Iranian energy resources. *See Tifani* Action, ECF No. 1 ¶¶ 20–21, 28–30; *see also Kirschenbaum v. 650 Fifth Ave. & Related Props.*, 830 F.3d 107, 135 (2d Cir. 2016); and
- The *Tifani* and Petroleum Assets fall within TRIA's definition of "blocked assets." TRIA § 201(d)(2)(A).

90. The Government's own allegations establish that the *Tifani* and Petroleum Assets are "blocked assets" under TRIA. TRIA defines "blocked assets" to include "any asset seized or frozen by the United States" pursuant to the International Emergency Economic Powers Act ("IEEPA"). TRIA § 201(d)(2)(A). Here, the relevant blocking predates and is independent of the Government's later seizure of the *Tifani* under 18 U.S.C. § 981(a)(1)(G)(i). Before that seizure, OFAC designated ENSA under Executive Order 13846—an IEEPA-based sanctions authority—and expressly identified the *Tifani* as blocked property in which ENSA held an interest. *See Tifani* Action, ECF No. 1 ¶ 29. The Petroleum Assets likewise fall within the applicable blocking regime because the Government alleges that NIOC and the Iranian government retained ownership of the cargo at the time of seizure. *See id.* ¶¶ 42–44; *see also Levinson v. Kuwait Fin. House (Malaysia) Berhad*, 44 F.4th 91, 98 n.6 (2d Cir. 2022). Because the *Tifani* was identified by OFAC as blocked property in which ENSA held an interest, and because the Petroleum Assets allegedly remained the property of NIOC and the Iranian government when they were seized, both assets qualify as blocked assets subject to execution under TRIA.

91. Pursuant to 18 U.S.C. § 983(a) and Rule G, the Claimants hereby assert a protective, prophylactic claim against the Defendant Property to the full extent necessary and available to

satisfy, in whole or in part, the outstanding compensatory damages owed to them under their judgments against Iran, plus post-judgment interest and costs as applicable, with the amount recoverable to be determined by the value of the *Tifani* and Petroleum Assets at the time they are applied toward satisfaction of those judgments.

92. The Claimants reserve all rights and remedies available at law or in equity to enforce their interest in the Defendant Property.

93. This claim is verified under penalty of perjury by the attached (or separately filed) § 1746 declaration, executed by an authorized signatory on behalf of Claimants.

Dated: September 30, 2026

Respectfully submitted,

*/s/ Joseph McClure*
**Joseph McClure (D.C. Bar No. 90002073)**
McDERMOTT WILL & SCHULTE LLP
500 North Capitol Street, NW Washington, D.C. 20001
T: (202) 756-8000
jmcclure@mcdermottlaw.com

**Michael Dockterman (IL Bar No. 3121675)**
*(pro hac vice forthcoming)*
McDermott Will & Schulte LLP
444 W. Lake Street, Suite 4000
Chicago, IL 60606
T: (312) 372-2000
mdockterman@mcdermottlaw.com

**Richard D. Heideman**
Heideman Nudelman & Kalik, PC
5335 Wisconsin Avenue, Suite 440
Washington, DC 20015
rdheideman@hnklaw.com
*Attorneys for Claimants*

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2026, I electronically filed the foregoing Notice of Verified Claim and Statement of Interest or Right in Property Subject to Forfeiture *In Rem* and its attachments, including Verification of Claimants' Claims, via CM/ECF for the United States District Court for the District of Columbia and therefore caused it to be served on all parties registered for CM/ECF, including attorneys for the government, in the above-captioned matter. In addition, I hereby certify that I caused a copy of the same to be mailed to the recipient listed below via USPS Certified Mail:

**Rajbir Datta**
Assistant United States Attorney
601 D Street, N.W.
Washington, DC 20530

Dated: September 30, 2026

/s/ *Joseph McClure*
Joseph McClure