**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br>v.<br><br>MOTOR TANKER TIFANI WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 9273337, AND THE OIL CARGO LADEN THEREON,<br><br>Defendants *In Rem*. | Civil Action No. 1:26-cv-01373-JEB |

**CLAIMANTS WITH SUCCESSFUL JUDGMENTS AGAINST IRAN'S ANSWER TO UNITED STATES' VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

According to Rule G(5)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules") and the Federal Rules of Civil Procedure, the Claimants with Successful Judgments Against Iran hereby answer (this "Answer") the United States' Verified Complaint for Forfeiture *In Rem*, dated April 22, 2026 (ECF No. 1) (the "Complaint"), as follows:

**NATURE OF THE ACTION AND DEFENDANT *IN REM***

1. The Claimants with Successful Judgments Against Iran (the "Claimants") lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 1 and therefore cannot admit or deny them; except that the Claimants deny that the United States ("Government") holds any right, title, or interest in the Motor Tanker TIFANI bearing International Maritime Organization Number 9273337 (the "TIFANI"), together with the oil cargo laden aboard the TIFANI at the time of its seizure in April 2026 (collectively, the "Defendant Property"), that is superior to the right, title, or interest of the Claimants in the Defendant Property, and further aver,

upon information and belief, that the oil cargo laden aboard the TIFANI is an asset of an agency or instrumentality of the Iranian government susceptible to execution in satisfaction of the Claimants' judgments. *See* ECF No. 7 at 2; ECF No. 8. Notwithstanding the foregoing, solely for purposes of this action and enforcement of their asserted superior rights to the Defendant Property, the Claimants accept as true, upon information and belief, the Government's factual allegations supporting the blocking and seizure of the Defendant Property.

2. The Claimants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 2 and therefore cannot admit or deny them; except that the Claimants admit, on information and belief, that the TIFANI was seized by Government authorities while carrying Iran-origin petroleum cargo, and further aver, upon information and belief, that such cargo is an asset of an agency or instrumentality of the Iranian government susceptible to execution in satisfaction of the Claimants' judgments against the Islamic Republic of Iran ("Iran").

**JURISDICTION AND VENUE**

3. Paragraph 3 states legal conclusions regarding jurisdiction to which no response is required. To the extent a response is required, the Claimants admit that this Court has *in rem* jurisdiction over this action under 28 U.S.C. §§ 1333, 1345, and 1355.

4. Paragraph 4 states legal conclusions regarding venue to which no response is required. To the extent a response is required, the Claimants admit that venue lies in this judicial district under 28 U.S.C. § 1355(b)(2).

5. Paragraph 5 states legal conclusions to which no response is required. To the extent a response is required, the Claimants admit that this Court may exercise jurisdiction under 14 U.S.C. § 522(a) and 28 U.S.C. §§ 2461(b) and 1333(1), and otherwise lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 5 and

therefore cannot admit or deny them.

## FACTS GIVING RISE TO FORFEITURE

### A. Relevant Entities

#### i. Government of Iran

6. Paragraph 6 purports to quote and characterize published reports and government materials that speak for themselves, and the Claimants respectfully refer the Court to those materials for their full and accurate contents and deny any characterization inconsistent with them. To the extent a further response is required, the Claimants admit, on information and belief, that the Government designated Iran as a state sponsor of terrorism on January 19, 1984, and has not since rescinded that designation.

#### ii. Iranian Ministry of Petroleum

7. Paragraph 7 purports to quote and characterize a website that speaks for itself, and the Claimants respectfully refer the Court to that website for its full and accurate contents and deny any characterization inconsistent with it. To the extent a further response is required, the Claimants admit, on information and belief, that the Iranian Ministry of Petroleum is an instrumentality of the Iranian government that oversees Iran's petroleum industry.

8. Paragraph 8 purports to quote and characterize constitutional and statutory materials that speak for themselves, and the Claimants respectfully refer the Court to those materials for their full and accurate contents and deny any characterization inconsistent with them. To the extent a further response is required, the Claimants admit, on information and belief, that the Iranian government asserts ownership of Iran's petroleum resources but otherwise lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 8 and therefore cannot admit or deny them.

9. Paragraph 9 purports to quote and characterize legal materials that speak for themselves, and the Claimants respectfully refer the Court to those materials for their full and accurate contents and deny any characterization inconsistent with them. To the extent a further response is required, the Claimants admit, on information and belief, that Iranian law vests ownership of Iran's oil resources in the Iranian government but otherwise lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 9 and therefore cannot admit or deny them.

10. Paragraph 10 purports to quote and characterize a government webpage that speaks for itself, and the Claimants respectfully refer the Court to that webpage for its full and accurate contents and deny any characterization inconsistent with it. To the extent a further response is required, the Claimants admit, on information and belief, that the Office of Foreign Assets Control ("OFAC") designated the Iranian Ministry of Petroleum under Executive Order 13,224 in October 2020 in connection with support to the Islamic Revolutionary Guard Corps-Qods Force ("IRGC-QF").

**iii. Islamic Revolutionary Guard Corps**

11. The Claimants admit, on information and belief, the allegations in Paragraph 11.

12. Paragraph 12 purports to quote and characterize government webpages that speak for themselves, and the Claimants respectfully refer the Court to those webpages for their full and accurate contents and deny any characterization inconsistent with them. To the extent a further response is required, the Claimants admit, on information and belief, that the Department of the Treasury made the findings described in Paragraph 12.

13. Paragraph 13 purports to quote and characterize government webpages that speak for themselves, and the Claimants respectfully refer the Court to those webpages for their full and

accurate contents and deny any characterization inconsistent with them. To the extent a further response is required, the Claimants admit, on information and belief, that the Islamic Revolutionary Guard Corps ("IRGC") and IRGC-QF rely on networks of shipping and front companies to conceal their involvement in the sale and shipment of Iranian oil, and that entities in the petrochemical sector provide financial support to the IRGC.

14. Paragraph 14 purports to quote and characterize government webpages that speak for themselves, and the Claimants respectfully refer the Court to those webpages for their full and accurate contents and deny any characterization inconsistent with them. To the extent a further response is required, the Claimants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 14 and therefore cannot admit or deny them.

15. Paragraph 15 purports to quote and characterize government webpages that speak for themselves, and the Claimants respectfully refer the Court to those webpages for their full and accurate contents and deny any characterization inconsistent with them. To the extent a further response is required, the Claimants admit, on information and belief, that the IRGC uses proceeds from the distribution of petroleum products to finance its terrorist activities.

16. Paragraph 16 purports to quote and characterize government webpages that speak for themselves, and the Claimants respectfully refer the Court to those webpages for their full and accurate contents and deny any characterization inconsistent with them. To the extent a further response is required, the Claimants admit, on information and belief, the allegations in Paragraph 16, including that OFAC designated the IRGC-QF under Executive Order 13,224 in October 2007.

17. Paragraph 17 purports to quote and characterize government webpages that speak for themselves, and the Claimants respectfully refer the Court to those webpages for their full and accurate contents and deny any characterization inconsistent with them. To the extent a further

response is required, the Claimants admit that in April 2019 the President announced the intended designation of the IRGC, including the IRGC-QF, as a Foreign Terrorist Organization under Section 219 of the Immigration and Nationality Act (8 U.S.C. § 1189), and otherwise lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 17 and therefore cannot admit or deny them.

18. Paragraph 18 purports to quote and characterize government webpages and judicial decisions that speak for themselves, and the Claimants respectfully refer the Court to those materials for their full and accurate contents and deny any characterization inconsistent with them. To the extent a further response is required, the Claimants admit, on information and belief, that the IRGC was responsible for planning the June 1996 attack on the Khobar Towers in Dhahran, Saudi Arabia, in which 19 United States Air Force personnel were killed and more than 350 were injured, and otherwise lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 18 and therefore cannot admit or deny them.

19. The Claimants admit, on information and belief, that the IRGC and IRGC-QF have engaged in acts of international terrorism that harm the interests and nationals of the United States, and otherwise lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 19 and therefore cannot admit or deny them.

**iv. National Iranian Oil Company**

20. Paragraph 20 purports to quote and characterize webpages that speak for themselves, and the Claimants respectfully refer the Court to those webpages for their full and accurate contents and deny any characterization inconsistent with them. To the extent a further response is required, the Claimants admit, on information and belief, that the National Iranian Oil Company ("NIOC") is the national oil company of Iran and a subsidiary of the Iranian Ministry of

Petroleum, and that OFAC has stated that the distribution of NIOC oil helps finance the IRGC-QF and its terrorist proxies.

21. Paragraph 21 purports to quote and characterize webpages that speak for themselves, and the Claimants respectfully refer the Court to those webpages for their full and accurate contents and deny any characterization inconsistent with them. To the extent a further response is required, the Claimants admit, on information and belief, that the Department of the Treasury determined that NIOC was an agent or affiliate of the IRGC and that OFAC designated NIOC under Executive Order 13,224 in October 2020.

**v. Iranian Oil Terminals Company**

22. Paragraph 22 purports to quote and characterize webpages that speak for themselves, and the Claimants respectfully refer the Court to those webpages for their full and accurate contents and deny any characterization inconsistent with them. To the extent a further response is required, the Claimants aver, upon information and belief, that the Iranian Oil Terminals Company ("IOTC") is an agency or instrumentality of the Iranian government, and otherwise lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 22 and therefore cannot admit or deny them.

**vi. Kharg Oil Terminal**

23. The Claimants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 23 and therefore cannot admit or deny them; except that the Claimants aver, upon information and belief, that the Kharg Oil Terminal is operated by IOTC, an agency or instrumentality of the Iranian government.

24. Paragraph 24 refers to a website that speaks for itself, and the Claimants respectfully refer the Court to that website for its full and accurate contents and deny any

characterization inconsistent with it. To the extent a further response is required, the Claimants aver, upon information and belief, that the National Iranian South Oil Company ("NISOC") is an agency or instrumentality of the Iranian government, and otherwise lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 24 and therefore cannot admit or deny them.

**vii. National Iranian South Oil Company**

25. Paragraph 25 purports to quote and characterize webpages that speak for themselves, and the Claimants respectfully refer the Court to those webpages for their full and accurate contents and deny any characterization inconsistent with them. To the extent a further response is required, the Claimants admit, on information and belief, that NISOC is a government-owned subsidiary of NIOC, and otherwise lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 25 and therefore cannot admit or deny them.

**viii. M/T TIFANI**

26. The Claimants admit, on information and belief, that the TIFANI is a crude oil tanker, and otherwise lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 26 and therefore cannot admit or deny them.

27. The Claimants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 27 and therefore cannot admit or deny them; except that the Claimants deny that any purported statelessness of the TIFANI defeats, diminishes, or otherwise affects the Claimants' interests in the Defendant Property or the status of the Defendant Property as blocked assets.

28. The Claimants lack sufficient knowledge or information to form a belief as to the

truth of the allegations in Paragraph 28 and therefore cannot admit or deny them; except that the Claimants aver, upon information and belief, that ENSA Ship Management Private Limited ("ENSA") has been the vessel's commercial/technical manager since in or around December 2024.

29. Paragraph 29 purports to quote and characterize a government webpage that speaks for itself, and the Claimants respectfully refer the Court to that webpage for its full and accurate contents and deny any characterization inconsistent with it. To the extent a further response is required, the Claimants admit, on information and belief, that on or about July 30, 2025, the Department of State designated ENSA pursuant to Executive Order 13,846 for knowingly engaging in a significant transaction for the purchase, acquisition, sale, transport, or marketing of petroleum or petroleum products from Iran, and that on the same day the TIFANI was identified as blocked property in which ENSA has an interest, but otherwise lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 29 and therefore cannot admit or deny them.

30. The Claimants admit, on information and belief, that the TIFANI has a history of transacting with Iran and sanctioned entities in Iran and of exhibiting shipping practices associated with Iran's shadow fleet, and otherwise lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 30 and therefore cannot admit or deny them.

**B. <u>AIS Spoofing</u>**

31. The Claimants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 31 and therefore cannot admit or deny them.

32. The Claimants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 32 and therefore cannot admit or deny them.

33. The Claimants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 33 and therefore cannot admit or deny them.

34. The Claimants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 34 and therefore cannot admit or deny them.

## C. <u>Historical Iran-Related Voyages by the TIFANI</u>

35. The Claimants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 35 and therefore cannot admit or deny them.

### a. The TIFANI's 2025 Shipments of Iran-Origin Oil

36. The Claimants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 36 and therefore cannot admit or deny them.

37. The Claimants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 37 and therefore cannot admit or deny them.

38. The Claimants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 38 and therefore cannot admit or deny them.

39. The Claimants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 39 and therefore cannot admit or deny them.

40. The Claimants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 40 and therefore cannot admit or deny them.

41. The Claimants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 41 and therefore cannot admit or deny them.

### b. The TIFANI's Current Voyage

42. The Claimants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 42 and therefore cannot admit or deny them; except that the Claimants aver, upon information and belief, that the Iran-origin crude oil loaded aboard the

TIFANI at the T-Jetty of Kharg Island, Iran, is an asset of an agency or instrumentality of the Iranian government susceptible to execution in satisfaction of the Claimants' judgments.

43. The Claimants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 43 and therefore cannot admit or deny them.

44. The Claimants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 44 and therefore cannot admit or deny them; except that the Claimants admit, on information and belief, that the Defendant Property remains in the custody and control of the Government, and deny that the Government's interdiction or custody of the Defendant Property defeats or is superior to the Claimants' interests in the Defendant Property.

**COUNT ONE – FORFEITURE**
**18 U.S.C. § 981(a)(1)(G)(i)**

45. The Claimants incorporate by reference their responses to Paragraphs 1 through 44 as though fully set forth herein, and deny that the statutory authority cited in Paragraph 45 vests in the Government any right, title, or interest in the Defendant Property that is superior to the right, title, or interest of the Claimants in the Defendant Property.

46. The Claimants admit that the IRGC, including the IRGC-QF, is a designated foreign terrorist organization.

47. Paragraph 47 states legal conclusions to which no response is required. To the extent a response is required, the Claimants deny that the Defendant Property is subject to forfeiture to the Government free of, or in a manner superior to, the interests of the Claimants in the Defendant Property.

**AFFIRMATIVE AND OTHER DEFENSES**

The following defenses are asserted on the basis of the Claimants' present knowledge, information, and belief. The Claimants reserve the right to amend, supplement, or withdraw any

defense and to assert additional defenses as discovery and further proceedings may warrant. Without admitting any allegation of the Complaint except as expressly admitted above, and without assuming any burden of proof, persuasion, or production not otherwise imposed on them by law, the Claimants assert the following affirmative and other defenses:

1. The Claimants hold a valid and legally cognizable interest in the Defendant Property, and in all events hold at least a facially colorable interest in the Defendant Property sufficient to establish their standing to contest this forfeiture at this stage of the proceedings.

2. The Claimants hold final, enforceable judgments for compensatory damages entered against the Islamic Republic of Iran under 28 U.S.C. § 1605A on account of acts of state-sponsored terrorism, totaling in excess of $1.5 billion in compensatory damages, which remain wholly unsatisfied and continue to accrue post-judgment interest under 28 U.S.C. § 1961. Their interest in the Defendant Property is superior to the Government's forfeiture claim under Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub. L. No. 107-297, 116 Stat. 2322, 2337 (2002) (codified at 28 U.S.C. § 1610 note), which authorizes holders of terrorism judgments to execute upon the blocked assets of a terrorist party or its agency or instrumentality notwithstanding any other provision of law.

3. The Defendant Property—the TIFANI and its petroleum cargo—constitutes a "blocked asset" within the meaning of TRIA § 201(d)(2)(A). Before the Government seized the Defendant Property under 18 U.S.C. § 981(a)(1)(G)(i), the Department of State had, on or about July 30, 2025, designated ENSA under Executive Order 13,846 and identified the TIFANI as blocked property in which ENSA has an interest. *See* ECF No. 7 at 2. The oil cargo likewise remained the blocked property of NIOC and the Iranian government. The applicable blocking therefore predates, and is independent of, the Government's forfeiture seizure.

4. The Claimants satisfy each element required to attach and execute upon the Defendant Property under TRIA § 201 because: (i) they hold final judgments for compensatory damages against Iran arising from acts of terrorism; (ii) Iran is a "terrorist party" under TRIA § 201(d)(4) by virtue of its designation as a state sponsor of terrorism; (iii) the Defendant Property constitutes blocked assets; and (iv) the Defendant Property was owned or operated by, or held for the benefit of, agencies or instrumentalities of Iran, including ENSA, World Crew Provider NV, NIOC, IOTC, and NISOC.

5. Because TRIA § 201(a) applies notwithstanding any other provision of law, it overrides the civil forfeiture authority invoked in the Complaint, and the Claimants' right to execute upon the Defendant Property is therefore superior to the Government's forfeiture claim.

6. The Fifth Amendment prohibits the deprivation of property without due process of law. Because the Claimants hold a property interest in the Defendant Property by virtue of their TRIA execution rights, forfeiting that property to the Government without affording the Claimants due process as to those rights would violate the Fifth Amendment.

7. The Fifth Amendment further prohibits the taking of private property for public use without just compensation. Because the Claimants hold a property interest in the Defendant Property, forfeiting that property to the Government would effect a taking without just compensation in violation of the Fifth Amendment.

8. Forfeiture of the Claimants' interest in the Defendant Property would constitute an excessive fine prohibited by the Excessive Fines Clause of the Eighth Amendment.

9. The Defendant Property should be held in a constructive trust for the benefit of the Claimants and other lawful claimants, if any, pending adjudication of their respective priorities.

10. To the extent the Defendant Property is not awarded to the Claimants, any forfeited

property or proceeds must be deposited into the United States Victims of State Sponsored Terrorism Fund pursuant to 34 U.S.C. § 20144(e)(2)(A).

11. Any interlocutory sale of the Defendant Property under Supplemental Rule G(7), including the sale contemplated in the Declaration of Gene Patton filed with the Complaint (ECF No. 1-1), does not extinguish or diminish the Claimants' interests. Any net proceeds of such a sale substitute for the Defendant Property, remain blocked assets subject to execution under TRIA § 201, and are subject to the Claimants' interests and priority to the same extent as the Defendant Property itself.

12. The Government's custody, maintenance, repair, transit, insurance, and storage costs for the Defendant Property, which the Government estimates at $15 million or more for the vessel alone (ECF No. 1-1 ¶ 8), may not be charged against or used to diminish the Claimants' interests except to the extent authorized by law and approved by the Court after notice to the Claimants.

13. Any alleged statelessness of the TIFANI, and the Government's interdiction of the TIFANI on that basis, does not alter the status of the Defendant Property as blocked assets of Iran and its agencies or instrumentalities, or the Claimants' rights under TRIA § 201.

14. The Claimants deny each allegation of the Complaint not expressly admitted herein, and reserve the right to amend this Answer and to assert additional defenses, crossclaims, counterclaims, and third-party claims as warranted by information revealed in further proceedings.

**COUNTERCLAIMS**

The Claimants assert the following counterclaims against the Government (collectively, the "TRIA Claims"). The Claimants seek a declaration that their interests in the Defendant Property and in any proceeds of the Defendant Property are entitled to priority for purposes of attachment

and execution over all non-TRIA claimants, including competing forfeiture claims, execution and lien creditors, and allege as follows:

1. This Court has jurisdiction over the TRIA Claims pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and 1367, and Supplemental Rule G.

2. Venue is proper in this District because the TRIA Claims are ancillary to, and arise from, the same proceeding pending before this Court.

3. The Claimants are judgment creditors of the Islamic Republic of Iran, holding final, unsatisfied judgments under 28 U.S.C. § 1605A for compensatory damages exceeding $1.5 billion arising from acts of state-sponsored terrorism, which they have served or are serving on Iran through diplomatic channels under 28 U.S.C. § 1608(a)(4).

4. The Claimants assert the TRIA Claims against the Government.

5. The TRIA Claims are asserted for the limited purpose of preserving the Claimants' priority rights and do not seek adjudication of relative priority until the universe of legally permissible claimants in this action is established.

6. Through the TRIA Claims, the Claimants assert no cause of action against the Government or any foreign sovereign other than execution against blocked assets as specifically authorized by TRIA.

7. The Claimants have timely filed a verified claim in this action, have served or are serving their judgments on Iran through diplomatic means under 28 U.S.C. § 1608(a)(4), and have obtained, or are pursuing, judicial authorization under 28 U.S.C. § 1610(c) to execute upon their judgments. *See* ECF Nos. 15; 15-2.

8. The Defendant Property constitutes blocked assets of Iran and/or its agencies or instrumentalities—including the TIFANI, which was identified as blocked property in which

ENSA has an interest, and the petroleum cargo owned by NIOC and the Iranian government—and is therefore subject to attachment and execution by the Claimants pursuant to TRIA § 201.

9. The Government has estimated that the oil cargo aboard the TIFANI has a value between $130,000,000 and $140,000,000 and that the vessel has an estimated net market or salvage value of approximately $3 million or less, and has been authorized by the Court to execute an interlocutory sale of the Defendant Property, with net proceeds to be held in an interest-bearing account pending the conclusion of this action. ECF No. 1-1 ¶¶ 8, 10, 13; ECF No. 6 at 3. Any such proceeds are subject to the TRIA Claims to the same extent as the Defendant Property.

10. The Government now asserts a competing interest in the Defendant Property.

**PRIORITY UNDER TRIA § 201**

11. The Claimants restate and reallege the foregoing paragraphs as if fully set forth herein.

12. TRIA § 201(a) provides that, notwithstanding any other provision of law, the blocked assets of a terrorist party or its agency or instrumentality are subject to execution by holders of terrorism judgments to the extent of their compensatory damages.

13. TRIA's "notwithstanding" clause preempts inconsistent federal and state law and subordinates competing claims that are not grounded in TRIA.

14. Federal courts have consistently recognized that TRIA's "notwithstanding" clause supersedes all other laws and establishes a priority execution regime favoring holders of terrorism judgments, including over the civil forfeiture statute. *See Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*, 556 U.S. 366, 391–92 (2009); *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 49 (2d Cir. 2010); *Est. of Levin v. Wells Fargo Bank, N.A.*, 156 F.4th 632, 643 n.1 (D.C. Cir. 2025); *United States v. All Petroleum-Product Cargo Aboard the Achilleas*,

No. 21-0305 (PLF), 2026 WL 2618380, at *8 (D.D.C. Sept. 4, 2026).

15. Accordingly, even if competing claimants satisfy federal forfeiture or state-law attachment and execution requirements, their claims are subordinate to the Claimants' TRIA Claims; and as among holders of terrorism judgments, the Claimants are entitled to priority to the fullest extent provided by applicable law, including by reason of their diligence in perfecting execution.

**DECLARATORY RELIEF**

16. The Claimants restate and reallege the foregoing paragraphs as if fully set forth herein.

17. An actual and justiciable controversy exists concerning the relative priority of the parties' interests in the Defendant Property.

18. The Claimants seek a declaration, as to the Defendant Property and any proceeds thereof, that: (i) the Claimants hold rights entitled to priority for attachment and execution purposes; (ii) any competing executions, attachments, liens, or asserted interests not arising under TRIA are subordinate to the Claimants' TRIA Claims; and (iii) any distribution of the Defendant Property, or any proceeds thereof, must respect that priority.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b) and Supplemental Rule G(9), the Claimants demand a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, the Claimants respectfully request that the Court:

1. Enter judgment in favor of the Claimants on their counterclaims against the Government;

2. Order that the Defendant Property, or any proceeds of an interlocutory sale thereof, be released from custody and delivered to the Claimants in partial satisfaction of their judgments against Iran;

3. Declare that the Claimants' interests have priority over competing interests for attachment and execution purposes under TRIA § 201, 28 U.S.C. § 1610, and all other applicable federal law;

4. Declare that any competing executions, attachments, liens, or asserted interests not arising under TRIA are subordinate to the Claimants' rights for attachment and execution purposes;

5. In the alternative, and only if the Court determines that the Defendant Property, or any portion or proceeds thereof, is not lawfully subject to attachment and execution by the Claimants, declare that any forfeiture, remission, or other disposition of such property must be deposited into the United States Victims of State Sponsored Terrorism Fund pursuant to 34 U.S.C. § 20144(e), and that no disposition inconsistent with that statutory framework may occur;

6. Award the Claimants their attorneys' fees and the costs of suit, including pursuant to 28 U.S.C. § 2465; and

7. Grant the Claimants such other and further relief as the Court deems just and proper.

* * *

Dated: October 21, 2026

Respectfully submitted,

*/s/ Joseph McClure*

**Joseph McClure (D.C. Bar No. 90002073)**
McDERMOTT WILL & SCHULTE LLP
500 North Capitol Street, NW
Washington, D.C. 20001
T: (202) 756-8000
F: (202) 756-8087
jmcclure@mcdermottlaw.com

**Michael Dockterman** *(Pro Hac Vice)*
McDERMOTT WILL & SCHULTE LLP
444 W. Lake Street, Suite 4000
Chicago, IL 60606
T: (312) 372-2000
F: (312) 984-7700
mdockterman@mcdermottlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that as of this date, I electronically filed the foregoing document via CM/ECF for the United States District Court for the District of Columbia and therefore caused it to be served on all parties registered for CM/ECF, including attorneys for the Government, in the above-captioned matter.

Dated: October 21, 2026

*/s/ Joseph McClure*

DM_US 605257377-5.152000.0011